FILED

2013 Aug-09  PM 04:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| AHMAD R. JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 2:12-cv-2749-LSC |
| | ) | |
| NANCY T. BUCKNER, et. al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OF OPINION

I.    Introduction

This is a case based on 42 U.S.C. § 1983, 28 U.S.C. § 2201, Alabama Code § 6-6-22, and Alabama common law. Ahmad R. Jones ("Plaintiff") claims that the actions of Nancy T. Buckner ("Buckner"), Alicia J. Fields ("Fields"), and Tyisha Thompson ("Thompson") (collectively, "Defendants") resulted in various constitutional, statutory, and state common law injuries when a ministerial error caused a complaint for paternity to be filed against him. Plaintiff alleges that his lack of notice resulted in a default adjudication of paternity, and the Defendants' inaction after learning of their error continued to cause injury. Before the Court is Buckner's Motion to Dismiss (Doc. 12), and Fields and Thompson's Motion to Dismiss. (Doc. 30.) Both motions

have been fully briefed and are ripe for decision.

II.    Background

The Alabama Department of Human Resources ("DHR"), among other things, helps families establish paternity, obtains orders for payment of child support, and secures compliance with child support court orders. Buckner serves as Commissioner of the DHR. On February 24, 2011, Nina Miles ("Miles") told Thompson, a case worker for the DHR, and C. Johnson ("Johnson"), legal counsel for the DHR, that the father of her child was Armad Jones. Thompson failed to verify the correct spelling of Armad Jones' name, and affixed Plaintiff's social security number and date of birth to their files after searching for Armad Jones' information on either the National Crime Information Center ("NCIC") database, a state database, or through credit records. One month later, the DHR filed a complaint for paternity in the Family Court of Jefferson County, Alabama, on behalf of Miles, alleging that Plaintiff was the father of her child.

A default judgment was entered against Plaintiff adjudicating him as the father of Miles' child, resulting in a court order establishing paternity ("Paternity Order"). Plaintiff became aware of the Paternity Order when the DHR attempted to collect child support by garnishing his tax refund. Plaintiff contacted a DHR case worker, and

informed the worker that he was not the father. Despite this, the DHR continued to enforce the Paternity Order against Plaintiff, causing his name to be reported in state and federal "dead beat dad" databases.

On or about March 9, 2012, Plaintiff again contacted the DHR, notifying them in writing that they had failed to take any corrective action. Less than one month later, Fields, a DHR caseworker, confirmed that Plaintiff was not the father and that the DHR had incorrectly spelled Armad Jones' name and associated Plaintiff's identifying information with their files. Despite this, Fields and Thompson took no corrective action. In fact, Fields caused an income withholding order ("IWO") to be issued on June 11, 2012, garnishing Plaintiff's wages, and a delinquency to be reported to national credit bureaus on July 20, 2012. At some point, Plaintiff filed a grievance regarding the paternity determination. On August 1, 2012, the Family Court of Jefferson County reversed the Paternity Order, terminated the IWO, suspended current child support, reduced Plaintiff's child support arrears balance to zero, and ordered the DHR to return any money being held—including money held for a 2011 tax refund offset. (Doc. 4-2 at 10.)[1] Following this disestablishment of paternity,

---

[1] In the complaint, Plaintiff quotes the order disestablishing paternity (Doc. 7, ¶ 11.) Since the document is central to his claims, "the Court may consider the document[] part of the pleadings for purposes of Rule 12(b)(6) dismissal." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

Plaintiff's passport was denied and his credit reports continue to list the erroneous information.

Plaintiff filed the present action on August 21, 2012 (Doc. 1), and amended his complaint on September 14, 2012 (Doc. 7), alleging several claims against the Defendants based on § 1983, state law, and federal as well as state declaratory judgment statutes. Initially, this action was brought against the State of Alabama, Buckner, Fields, Thompson, and Johnson. However, Plaintiff has since moved to dismiss the State of Alabama, Buckner in her individual capacity, and Johnson. (Docs. 17, 33.) Further, he has given notice of withdrawal of his claims based on intentional conduct. (Doc. 17.) The only remaining defendants are Buckner in her official capacity, and Fields and Thompson in their official and individual capacities.

III.   Standard

A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be granted. "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510

(11th Cir. 1993)). Further, all "reasonable inferences" are drawn in favor of the plaintiff. *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).[2] The plaintiff must plead "enough facts to state a claim that is plausible on its face." *Id.* at 570. Unless a plaintiff has "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.*

"[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (quoting *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001)). And, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has

---

[2] In *Bell Atlantic Corp. v. Twombly*, the U.S. Supreme Court abrogated the oft-cited standard that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" set forth in *Conley v. Gibson*, 355 U.S. 41 (1957). *Bell Atl. Corp.*, 550 U.S. at 560-63. The Supreme Court stated that the "no set of facts" standard "is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563.

not 'show[n]'—'that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Therefore, the Supreme Court suggested that courts adopt a "two-pronged approach" when considering motions to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.' " *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 129 S. Ct. at 1950).

Importantly, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id.* (quoting *Iqbal*, 129 S. Ct. at 1951-52). However, "[a] complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on any possible theory." *Brooks*, 116 F.3d at 1369.

IV.   Discussion

Plaintiff brings all Counts against the Defendants in their official capacities, and against Fields and Thompson in their individual capacity. The Court will address the individual capacity claims first.

A.    Claims against Fields and Thompson in their Individual Capacities

1.    § 1983 Claims

Fields and Thompson argue that they are entitled to qualified immunity as to Plaintiff's § 1983 claims asserted against them in their individual capacity. Qualified immunity shields governmental officers from "liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

To support their qualified immunity defense, Fields and Thompson "must first prove that [they were] acting within the scope of [their] discretionary authority when the allegedly wrongful acts occurred." *Mathews v. Crosby*, 480 F.3d 1265, 1269 (11th Cir. 2007). A defendant acts within his discretionary authority when the acts in question "are of a type that fell within the employee's job responsibilities." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). To determine this, the Court must ask whether Fields and Thompson were " (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within [their] power to utilize." *Id.* " To that end, 'a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to,

the outer perimeter of an official's discretionary duties.' " *Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1303 (11th Cir. 2006) (quoting *Harbert Int'l v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998)).

Fields and Thompson argue that they were acting within the scope of their discretionary authority based on Alabama Code § 38-10-3, which provides that the DHR "shall operate child support programs as may be required under the provisions of Title IV-D [of the Social Security Act], including, but not limited to, locating absent parents, establishing paternity, establishing or modifying support orders, enforcing support obligations and related matters, as described or defined by the Social Security Act and amendments thereto." Ala. Code § 38-10-3(a). Plaintiff argues that Fields and Thompson were not acting within their discretionary authority because they had no discretion to: (1) report Plaintiff's child support delinquency to major credit reporting agencies without first notifying him pursuant to the Alabama Administrative Code, (2) inquire into Plaintiff's credit without first notifying him pursuant to the FCRA, (3) issue an IWO after the DHR had notice that Plaintiff was not the father of Miles' child and begin a new paternity proceeding against another person, and (4) withhold this knowledge from the State court for six months.

First, regardless of whether Fields and Thompson were required to provide

adequate notice pursuant to the Alabama Administrative Code and the FCRA,[3] such ministerial acts are still categorized as discretionary functions. *See McCoy v. Webster*, 47 F.3d 404, 407 (11th Cir. 1995) (the term "discretionary authority" includes actions that do not necessarily involve an element of choice); *Jordan v. Doe*, 38 F.3d 1559, 1565–66 (11th Cir. 1994) (believing that an act must be discretionary to receive the protection of qualified immunity is an overly narrow interpretation of the term "discretionary authority").

Second, Plaintiff's paternity was not disestablished by a court until August 1, 2013. Prior to this time, Fields and Thompson could seek an IWO through the DHR's authority to enforce support obligations and related matters under Alabama Code § 38-10-3(a). *See* Ala. Code § 38-10-3(b) ("As a part of the operation of the support programs established under subsection (a) hereof the [DHR] shall administer income withholding in accordance with procedures which it shall establish for keeping adequate records to document, track, and monitor support payments collected pursuant to Title IV-D of the Social Security Act."). By seeking an IWO, Fields and Thompson were performing a legitimate job-related function through means that were

---

[3] Nowhere in the complaint does Plaintiff allege facts demonstrating that Fields or Thompson failed to notify him before reporting his child support delinquency to major credit reporting agencies or inquiring into his credit.

within their power to utilize.

Finally, Alabama law makes it clear that establishing parentage is a function of the DHR. Ala. Code § 38-10-3(a). Fields and Thompson were performing a legitimate job-related function through means that were within their power to utilize when they withheld their knowledge that Plaintiff was not the father of Miles' child for six months.

Plaintiff further argues that Fields and Thompson acted in bad faith, fraudulently, maliciously, and under a mistaken interpretation of the law in performing their job-related functions, and cannot be immune from civil liability in their personal capacities. In support of this theory, Plaintiff offers *Grider v. City of Auburn, Ala.*, 618 F.3d 1240 (11th Cir. 2010). *Grider*, however, dealt with state-agent immunity under Alabama law. *Id* at 1254–55.[4] Thus, it is inapplicable to a qualified immunity analysis.

Since Fields and Thompson have established that they were acting within their discretionary authority, " the burden shifts to the plaintiff to show that [they are] not

---

[4] Alabama law holds that " [s]tate agents are immune from civil liability in their personal capacities for negligence and wantonness, when the challenged conduct involves the exercise of judgment (1) in the administration of a government agency or department, including allocating resources, and hiring, firing, transferring, assigning, or supervising personnel; or (2) in the discharge of duties imposed by statute, rule, or regulation in . . . counseling or releasing persons of unsound mind . . . ." *Gowens v. Tys. S. ex rel. Davis*, 948 So. 2d 513, 522 (Ala. 2006) (internal emphasis and quotation marks omitted) (quoting *Howard v. City of Atmore*, 887 So. 2d 201, 201–05 (Ala. 2004)). This form of immunity was first announced in *Ex parte Cranman*, 792 So. 2d 392 (Ala. 2000).

entitled to qualified immunity." *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003). This involves a two prong analysis: " First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (internal citations omitted). The Supreme Court has provided that " judges of the district courts . . . should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

" The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). " A government–officer defendant is entitled to qualified immunity unless, at the time of the incident, the 'preexisting law dictates, that is, truly compel[s],' the conclusion for all reasonable, similarly situated public officials that what Defendant was doing

violated Plaintiffs' federal rights in the circumstances." *Marsh*, 268 F.3d at 1030–31
(citing *Lassiter v. Alabama A&M Univ.*, 28 F.3d 1146, 1150 (11th Cir. 1994)).

While a case with identical facts is not necessary for the law to be clearly
established, "the preexisting law must make it obvious that the defendant's acts
violated the plaintiff's rights in the specific set of circumstances at issue." *Youmans
v. Gagnon*, 626 F.3d 557, 563 (11th Cir. 2010) (citation omitted). Indeed, '[a]
government official can be put on notice that his actions will violate a constitutional
or statutory right by . . . a legal principle announced by a decision from a court with
jurisdiction over the place where the violation of rights was committed.'" *Harper v.
Lawrence County, Ala.*, 592 F.3d 1227, 1237 (11th Cir. 2010) (prior case law establishing
the illegality of delayed or inadequate treatment for alcohol withdrawal should have
put supervisors on notice that policies of delayed investigation into the treatment of
alcohol withdrawal would be unlawful as well). However, the Eleventh Circuit has
"held time and again that clearly established general principles of law will seldom if
ever suffice to strip a defendant of qualified immunity." *Harbert Intern., Inc. v. James*,
157 F.3d 1271, 1284 (11th Cir. 1998). In such cases, qualified immunity can only be
defeated "where a clearly established legal principle applies with such 'obvious clarity'
that a reasonable government official in the defendants' position would have known

that their actions were unlawful." *Id.* at 1285.

       i.     Count I

     Count I asserts § 1983 claims against Fields and Thompson for violations of Plaintiff's procedural due process rights based on the Defendants' failure to provide adequate notice of the paternity adjudication and an opportunity to be heard. Plaintiff argues that the Eleventh Circuit has deemed a paternity determination and levy of taxes and income without probable cause, meaningful notice, or a hearing to be clearly established constitutional violations.

     Plaintiff offers several cases for the proposition that a paternity determination with no notice or an opportunity to be heard is unlawful. *See Hunter v. State*, 301 So. 2d 541, 544–45 (Ala. 1974) (Supreme Court of Alabama noted that paternity proceedings were quasi-criminal when defendant was challenging the trial court's jury charge that he had the burden of proof as to the statute of limitations, and whether the trial court properly sustained an objection to his question to the children's mother regarding whether she had hired a special prosecutor); *Burns v. Copeland*, 2011 WL 1217930 (M.D. Ala. March 31, 2011) (court determined that the plaintiff's procedural due-process rights were not violated because he made no claim that he received insufficient notice or that he did not have an opportunity to present his objections

when DHR employees initiated legal proceedings to collect the plaintiff's Social Security Income benefits, but such benefits were not subject to garnishment for payment of child support arrears under federal law); *Little v. Streater*, 452 U.S. 1 (1981) (Supreme Court held that a defendant was denied due process when a statute effectively denied him access to blood grouping tests because of his indigent status); *Smith ex rel. Smith v. Siegelman*, 322 F.3d 1290, 1297 (11th Cir. 2003) (quoting *United States v. Sigma Int'l, Inc.*, 300 F.3d 1278, 1280 (11th Cir. 2002)) (in dismissing a minor's § 1983 claim, Eleventh Circuit reasoned that the minor had only suffered stigmatization when placed on the state's child abuse registry by the DHR, but had "not alleged that he has suffered any loss of employment, any diminution of salary, or anything else that 'would . . . qualify as some more tangible interest[].'").

However, none of the cases Plaintiff has offered in support of Count I clearly establish a procedural due process violation based on Thompson's ministerial error. Accordingly, Plaintiff has failed to meet his burden of proof. Further, the Court cannot find any law clearly establishing this constitutional violation regarding Fields and Thompson's conduct. Thus, Count I is barred by the doctrine of qualified immunity and due to be dismissed as to Fields and Thompson in their individual capacities.

ii.    Count VII

Count VII asserts a § 1983 claim against Fields and Thompson for violations of Plaintiff's Fourth Amendment rights based on a search of the NCIC database, a state database, and Plaintiff's credit records without probable cause or a warrant. The Court is not satisfied that the facts as alleged make out a violation of this constitutional right.

"The touchstone of Fourth Amendment analysis is whether a person has a 'constitutionally protected reasonable expectation of privacy.' " *California v. Ciraolo*, 476 U.S. 207, 211 (1986) (citation omitted). A person does not have a reasonable expectation of privacy in public records such as those accessed through the NCIC database, and searching Plaintiff's records through any such database does not violate the federal constitution. *See United States v. Ellison*, 462 F.3d 557, 562 (6th Cir. 2006) (finding individual did not have expectation of privacy in information regarding outstanding warrant retrieved from computer database); *Eagle v. Morgan*, 88 F.3d 620, 628 (8th Cir. 1996) (finding NCIC search did not violate Plaintiff's federal constitutional rights because Plaintiff had "no legitimate expectation of privacy in the contents of his criminal history file"). Further, Plaintiff does not have a reasonable expectation of privacy in his credit records, as they are held and constantly viewed by third parties. *See United States v. Miller*, 425 U.S. 435, 442 (1976) (finding no reasonable expectation of privacy in personal financial documents held by banks

because "the documents obtained, including financial statements and deposit slips, contain only information voluntarily conveyed to the banks and exposed to their employees in the ordinary course of business."). Thus, the facts as alleged do not make out a Fourth Amendment violation based on an unlawful search, and Count VII is due to be dismissed.

### iii.    Count VIII

Count VIII asserts a § 1983 claim against Fields and Thompson for violations of Plaintiff's Fourth Amendment rights based on the Defendants' harassment of Plaintiff and their seizure of his tax refund without probable cause or a warrant. However, Plaintiff does not provide any law clearly establishing this constitutional violation when there is a judgment for child support in existence. Accordingly, he has failed to meet his burden of proof. Further, the Court cannot find any law clearly establishing this constitutional violation regarding Fields and Thompson's conduct. Thus, Count VIII is barred by the doctrine of qualified immunity and due to be dismissed as to Fields and Thompson in their individual capacities.

### iv.    Count IX

Count IX asserts a § 1983 claim against Fields and Thompson for violations of Plaintiff's Fourth Amendment rights based on malicious prosecution for failure to

conduct a reasonable investigation, continued harassment and prosecution, and failure to take corrective action. Plaintiff argues that the Eleventh Circuit has deemed a defendant's continued prosecution of a paternity adjudication even after receiving notice that the paternity order was erroneous to be a clearly established constitutional violation. (Doc. 36 at 19.)

In support, Plaintiff offers *Taylor By and Through Walker v. Ledbetter*, 818 F.2d 791 (11th Cir. 1987) (reversing district court dismissal for failure to state a claim where foster child sued Georgia state and county officials, alleging violations of both substantive and procedural due process for their failure to prevent the abuse a child suffered at the hands of her foster mother), *Sarver v. Jackson*, 334 Fed. Appx. 526 (11th Cir. 2009) (employees of state college entitled to qualified immunity because student failed to allege facts establishing a violation of her due process rights where she was notified of charges against her and given an opportunity to be heard and present a defense, failed to appear at any scheduled meetings to address the violations with which she was charged, sent a letter notifying her of the charges against her, and gave her an opportunity to appeal), and *Ross v. State of Alabama*, 15 F. Supp. 2d 1173 (M.D. Ala. 1998) (court dismissed § 1983 claim against employees of the DHR arising from an investigation of a report of child neglect).

None of these cases are factually similar to the current case. Plaintiff appears to be offering these cases to establish that a constitutional violation may exists based on Fields and Thompson's failure to act; however, these cases do not truly compel the conclusion that Fields and Thompson's conduct was a violation of Plaintiff's constitutional rights when there is a judgment for child support in existence. Accordingly, Plaintiff has failed to meet his burden of proof. Further, the Court cannot find any law clearly establishing this constitutional violation regarding Fields and Thompson's conduct. Thus, Count IX is barred by the doctrine of qualified immunity and due to be dismissed as to Fields and Thompson in their individual capacities.

v.      Count X

Count X asserts a § 1983 claim against Fields and Thompson for violations of Plaintiff's Sixth Amendment rights based on the Defendant's failure to afford Plaintiff an opportunity to confront the evidence and witnesses against him at the paternity adjudication. The Court is not satisfied that the facts as alleged make out a violation of this constitutional right.

The Confrontation Clause states: " In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. Here, Plaintiff has not been subject to a criminal prosecution, so the

Confrontation Clause has not been implicated.

Although Plaintiff's complaint alleges violations of the Sixth Amendment's Confrontation Clause, his brief clearly alleges violations of the Assistance of Counsel Clause as well based on his statement that "[f]ailure to afford the plaintiff counsel . . . violated his Sixth and Eighth Amendment rights." (Doc. 36 at 18.) Plaintiff offers *Turner v. Rogers*, 131 S. Ct. 2507 (2011), arguing that the case implicates the Sixth Amendment because state involvement in child support proceedings requires heightened scrutiny.

In *Turner*, a non-custodial parent was unrepresented by counsel at a brief civil contempt hearing and sentenced to twelve months in prison for failing to meet child support obligations. *Turner*, 131 S. Ct. at 2513. The Supreme Court held that " where as here the custodial parent (entitled to receive the support) is unrepresented by counsel, the State need not provide counsel to the non[-]custodial parent (required to provide the support)." *Id.* at 2512. However, the Court noted " that the State must nonetheless have in place alternative procedures that assure a fundamentally fair determination of the critical incarceration-related question, whether the supporting parent is able to comply with the support order."

While *Turner* may demonstrate that a child support proceeding could implicate

Plaintiff's Sixth Amendment rights, it does not compel the conclusion that Fields and Thompson's conduct violated those rights. *Turner* dealt with a civil contempt hearing, whereas this case deals with a paternity adjudication. The defendant in *Turner* was also indigent, while the facts as alleged in the Complaint do not demonstrate that Plaintiff is indigent. Accordingly, Plaintiff has failed to meet his burden of proof. Further, the Court cannot find any law clearly establishing that Fields and Thompson's conduct violated Plaintiff's Sixth Amendment rights. Thus, Count X is barred by the doctrine of qualified immunity and due to be dismissed as to Fields and Thompson in their individual capacities.

vi.    Count XI

Count XI asserts a § 1983 claim against Fields and Thompson for violating Plaintiff's First Amendment right to freedom of expression. He bases this claim on Fields and Thompson's retaliation against him for filing a grievance against them. However, Plaintiff does not provide any law clearly establishing this constitutional violation when there is a judgment for child support in existence, and he has failed to meet his burden of proof. Further, the Court cannot find any law clearly establishing that Fields and Thompson's conduct in failing to take corrective action, reporting Plaintiff to national credit databases, and continuing to prosecute the Paternity Order

violated his First Amendment rights. Thus, Count XI is barred by the doctrine of qualified immunity and due to be dismissed as to Fields and Thompson in their individual capacities.

vii.    Count XII

Count XII asserts a § 1983 claim against Fields and Thompson for violations of Plaintiff's First Amendment rights in the exercise of his religion. Plaintiff argues that the paternity adjudication and continued prosecution of the Paternity Order abridged his freedom to process his faith and religion as a conservative Christian. The Court is not satisfied that the facts as alleged make out a violation of this constitutional right.

The Eleventh Circuit has held:

[T]he threshold questions in analyzing a law challenged under the Free Exercise Clause are (1) is the law neutral, and (2) is the law of general applicability? The neutrality inquiry asks whether the object of a law is to infringe upon or restrict practices because of their religious motivation. The general applicability prong asks whether the government has in a selective manner impose[d] burdens only on conduct motivated by religious belief. [A] law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice. Rather, it needs only to survive rational basis review, under which it is presumed constitutional and the burden is on the plaintiff to prove that it is not rationally related to a legitimate government interest.

*Keeton v. Anderson-Wiley*, 664 F.3d 856, 879–80 (11th Cir. 2011).

Section 38-10-3(a) of the Alabama Code requires the DHR to operate child

support programs, including establishing paternity. This is a neutral law of general applicability. The object of the law is to establish paternity for purposes of child support, not restrict religious practices. Nowhere in the complaint does Plaintiff allege facts showing that the DHR has attempted to establish paternity only on those who profess to be conservative Christians. Thus, the facts as alleged do not make out a constitutional violation, and Count XII is due to be dismissed.

viii.   Count XIII

Count XIII asserts a § 1983 claim against Fields and Thompson for a violation of Plaintiff's Eighth Amendment rights because the paternity adjudication, reports, and seizures constitute cruel and unusual punishment. Plaintiff offers *Turner v. Rogers*, 131 S. Ct. 2507 (2011), arguing that the case implicates the Eighth Amendment because state involvement in child support proceedings requires heightened scrutiny.

Nowhere in *Turner* is the Eighth Amendment ever mentioned, much less implicated. Further, " the evolving standards of decency that mark the progress of a maturing society" have not yet come to recognize cruel and unusual punishment as a paternity adjudication, damage to reputation, and seizures of income. *See Trop v. Dulles*, 356 U.S. 86, 101 (1958). Accordingly, Plaintiff has failed to meet his burden of proof. Further, the Court cannot find any law clearly establishing that Fields and

Thompson's conduct violated Plaintiff's Eighth Amendment rights. Thus, Count XIII is barred by the doctrine of qualified immunity and due to be dismissed as to Fields and Thompson in their individual capacities.

ix.    Count XIV

Count XIV asserts a § 1983 claim against Fields and Thompson for a violation of Plaintiff's Fourteenth Amendment right of equal protection because Miles, a female, was afforded an opportunity to present testimony and evidence that formed the basis of the paternity adjudication, whereas Plaintiff, a male, was not afforded such an opportunity. Plaintiff contends that the Eleventh Circuit has deemed a "State's coddling of [a] mother to accomplish its end while recklessly trampling on [a] plaintiff's rights" to be a clearly established constitutional violation. (Doc. 36 at 20.) However, he offers no law whatsoever to support this claim. Accordingly, he has failed to meet his burden of proof. Further, the Court cannot find any law clearly establishing this constitutional violation with respect to Fields and Thompson's conduct. Thus, Count XIV is barred by the doctrine of qualified immunity and due to be dismissed as to Fields and Thompson in their individual capacities.

2.    State Law Claims

Counts II, III, IV, and V allege state law claims against the Defendants.[5] As will be demonstrated, all claims based on federal law are due to be dismissed. Although Plaintiff contends that diversity jurisdiction exists over his state law claims, it is clear to the Court that the amount-in-controversy requirement cannot be met after Plaintiff's federal claims are dismissed. Accordingly, Plaintiff's state law claims against Fields and Thompson in their individual capacity are due to be dismissed. If Plaintiff wishes to pursue these claims, he may do so in state court.

### 3.  Declaratory and Injunctive Claims

Count VI alleges claims for declaratory and injunctive relief pursuant to 28 U.S.C. § 2201 and Ala. Code § 6-6-22. Specifically, Plaintiff seeks: (1) to clarify the parties rights relating to Rule 32 of the Alabama Rules of Judicial Administration, Alabama code §§ 26-17-636(f), 8-8-10, & 12-15-106, and Rule 2.1 of the Alabama Rules of Juvenile Procedure; (2) a declaration that the paternity adjudication was illegal and resulted in continuing damage because the Defendants have refused to correct their

---

[5] Specifically, Count II alleges state law claims of negligence or wantonness for failure to accurately record information, conduct a minimal due diligence investigation, and take corrective action after notice of an error; Count III alleges a state law claim of fraudulent misrepresentation and concealment for telling various governmental entities that Plaintiff was the father of Miles' child and he was delinquent on his child support; Count IV alleges state law claims of libel and slander per se for false oral and written statements and reports to various agencies concerning the Plaintiff's failure to pay child support; and Count V alleges a state law claim of malicious prosecution due to the lack of probable cause for the paternity proceedings and continued enforcement of the Paternity Order after notice that there was no initial probable cause to proceed.

error and notify appropriate agencies; (3) to enjoin the Defendant's conduct; and (4) a declaration that it is the Defendant's legal duty to correct their error and cease and desist from enforcing the order establishing paternity and otherwise violating Plaintiff's constitutional rights. Further, Plaintiff's § 1983 claims seek equitable relief.

i.     Equitable Relief Pursuant to § 1983

Plaintiff seeks declaratory and injunctive relief under § 1983 to end continuing violations of his federal rights and prevent future violations of his federal rights. However, state officers may only be sued in their individual capacity for money damages under the statute. *See Brown v. Montoya*, 662 F.3d 1152, 1161 n. 5 (10th Cir. 2011) ("Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief.") (citing *Hafer v. Melo*, 502 U.S. 21, 30 (1991)); *Greenwalt v. Indiana Dep't of Corrections*, 397 F.3d 587, 589 (7th Cir. 2005) (noting that § 1983 does not permit injunctive relief against state officials sued in their individual capacity). Accordingly, Plaintiff's § 1983 claims for equitable relief against Fields and Thompson in their individual capacity are due to be dismissed.

ii.     Count VI Declaratory Relief

As will be demonstrated, all claims based on federal law are due to be dismissed.

Plaintiff brings his claims in Count IV under Ala. Code § 6-6-22 and 28 U.S.C. § 2201. However, § 2201 is procedural only, and does not confer subject-matter jurisdiction on the Court. *Skelly Oil v. Phillips Petroleum*, 339 U.S. 667, 671 (1950). It is clear to the Court that neither supplemental jurisdiction nor diversity jurisdiction will exist over these claims once Plaintiff's federal claims are dismissed. Accordingly, Plaintiff's claims for declaratory relief in Count VI against Fields and Thompson in their individual capacity are due to be dismissed.

### B.   Claims against the Defendants in their Official Capacity

The Defendants argue that they are entitled to immunity under the State's sovereign immunity as to all claims brought against them in their official capacity. Sovereign immunity prohibits federal courts from hearing claims brought by individuals against unconsenting States. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Because suits against state officials or agents in their official capacity are actually suits against a State, they are absolutely barred by sovereign immunity. *See Pennhurst State Sch. & Hosp.*, 465 U.S. at 101, 103; *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Further, sovereign immunity applies to federal and state claims. *See Pennhurst State Sch. & Hosp.*, 465 U.S. at 103–04. As the Eleventh Amendment has clarified, Article III's grant of jurisdiction to suits between citizens

of one state and another state does not abrogate this inherent immunity such that sovereign immunity still applies in federal court. *See Hans v. Louisiana*, 134 U.S. 1, 10 (1890).[6]

Despite its seemingly broad reach, there are exceptions to sovereign immunity. Indeed, "[a] sovereign's immunity may be waived, and the Court consistently has held that a State may consent to suit against it in federal court." *Pennhurst State Sch. & Hosp.*, 465 U.S. at 99. Additionally, in *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court held that sovereign immunity does not extend to suits against state officers seeking prospective equitable relief to end continuing violations of federal law. *See Edelman v. Jordan*, 415 U.S. 651, 664–71 (1974); *Scheuer v. Rhodes*, 416 U.S. 232, 237–38 (1974); *Florida Ass'n of Rehabilitation Facilities, Inc. v. State of Fla. Dept. of Health and Rehabilitative Services*, 225 F.3d 1208, 1219 (11th Cir. 2000).[7]

1.     State Law Claims

In this case, Counts II, III, IV, and V are all state law claims asserted against state officers. In an effort to avoid sovereign immunity, Plaintiff purports to withdraw

---

[6] This is sometimes referred to as "Eleventh Amendment immunity." *See Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985).

[7] Congress may also abrogate the immunity of the states under the Eleventh Amendment. *Ross v. Jefferson County Dept. Of Health*, 701 F.3d 655, 659 (11th Cir. 2012). However, § 1983 was not intended to abrogate a State's sovereign immunity through the Eleventh Amendment. *See Graham*, 473 U.S. 159, 169 n.17.

all claims for monetary damages against the Defendants in their official capacities, leaving only Plaintiff's claims for declaratory and injunctive relief. (Doc. 18 at 15 n.4); (Doc. 36 at 7 n.1.) However, suits for prospective relief brought under *Young* are inapplicable in a suit against a state official on the basis of state law. *Pennhurst State Sch. & Hosp.*, 465 U.S. at 106. Accordingly, Counts II–V are due to be dismissed against the Defendants in their official capacities.

### 2.  Federal Law Claims and Count VI

As previously mentioned, Plaintiff has withdrawn all claims for monetary damages against the Defendants in their official capacities. *See supra* Part IV.B.1. Plaintiff's claims for equitable relief can be broken down into the following requests: (1) for declaratory relief to declare that the Defendants have violated Plaintiff's rights;[8] (2) for injunctive relief to prevent future violations of Plaintiff's rights;[9] (3) for

---

[8] In his complaint's request for relief, Plaintiff seeks "a declaratory judgment finding that the defendants wrongfully adjudicated plaintiff the father, reported said information and levied his wages and tax refund in violation of the Due Process, Takings and Equal Protection Clauses of the [Fourteenth] and [Fifth] Amendments, the [First], [Fourth], [Sixth] and [Eighth] Amendments, 42 U.S.C. [§] 1983 and state common law." (Doc. 7 at 33.) In Count VI, Plaintiff seeks a declaration that the paternity adjudication was illegal and resulted in continuing damage because the Defendants have refused to correct their error and notify appropriate agencies. (*Id.* at 20–21.) In his responsive briefs, Plaintiff argues that he is seeking a declaratory judgment that the Defendants' policy and practices are beyond their authority and have violated Alabama Administrative Code § 660-1-6.09(9)(b), the Fair Credit Reporting Act ("FCRA"), and Plaintiff's constitutional rights. (Doc. 18 at 9–10, 12–13); (Doc. 36 at 4, 6.)

[9] In his complaint's request for relief, Plaintiff seeks to "enjoin the [D]efendants from collecting or otherwise enforcing the unlawful collection and adjudication." (Doc. 7 at 34.) In Count

injunctive relief to end continuing violations of Plaintiff's rights;[10] and (4) for declaratory relief to clarify Plaintiff's rights and declare the scope of the Defendants' legal duties.[11]

> i. Declaration that the Defendants have Violated Plaintiff's Rights

This declaratory relief is barred by sovereign immunity. Plaintiff makes several arguments for why sovereign immunity does not apply to these requests. First, he

---

VI, Plaintiff seeks to enjoin the Defendant's conduct. (*Id.* at 21.) In his responsive briefs, Plaintiff argues that he is seeking an order enjoining the Defendants from enforcing the DHR's policies and practices of (a) reporting paternity and support delinquencies of non-custodial parents to major credit reporting agencies without first sending them notice and an opportunity to object to the reporting, (b) inquiring into non-custodial parents credit reports without said notice, and (c) post disestablishment credit reporting and income withholding. (Doc. 18 at 9–10, 12–13); (Doc. 36 at 4, 6.)

[10] In his responsive briefs, Plaintiff argues that he is seeking (1) an order compelling the Defendants to immediately (a) send written notification to major credit reporting agencies that their reports were made in error, (b) request that the erroneously reported information be removed, (c) send written notification to major credit reporting agencies and employers that the reports and withholding determinations were made in error, and (d) request that the erroneously reported information be removed and any withheld funds be refunded; (2) an order compelling the Defendants to immediately send written notification to any non-custodial parents notifying them of any erroneous report and withholding; and (3) an order compelling the Defendants to immediately (a) send written notification to major credit reporting agencies that Plaintiff's reports were inaccurate, and (b) request that the inaccurately reported information be removed from Plaintiff's credit report. (Doc. 18 at 9–10, 12–13); (Doc. 36 at 4, 6.)

[11] In Count VI, Plaintiff seeks the following based on federal law: (1) to clarify the parties rights relating to Rule 32 of the Alabama Rules of Judicial Administration, Alabama code §§ 26-17-636(f), 8-8-10, & 12-15-106, and Rule 2.1 of the Alabama Rules of Juvenile Procedure; and (2) a declaration that it is the Defendant's legal duty to correct their error and cease and desist from enforcing the order establishing paternity and otherwise violating Plaintiff's constitutional rights. (Doc. 7 at 20–23.)

argues that Alabama has waived its sovereign immunity. (Doc. 18 at 9.)  The Alabama Supreme Court has found that absolute sovereign immunity does not apply to actions brought " (1) to compel [an official] to perform his duties, (2) to compel [an official] to perform ministerial acts, (3) to enjoin [an official] from enforcing unconstitutional laws, (4) to enjoin [an official] from acting in bad faith, fraudulently, beyond his authority, or under mistaken interpretation of the law, or (5) to seek construction of a statute under the Declaratory Judgment Act if [the official]  is a necessary party for the construction of the statute." *Parker v. Amerson*, 519 So. 2d 442, 443 (Ala. 1987). However, the first four exceptions listed deal with injunctions against the state official, not declaratory relief. The fifth exception, on the other hand, deals with a declaratory judgment; however, Plaintiff is not seeking the construction of State statutes to which the Defendants are necessary parties. Thus, the declaratory relief does not fall under any of the exceptions in *Parker*.

Plaintiff also contends that the Alabama Supreme Court has held that state agents are not immune when they fail to discharge duties pursuant to detailed rules or regulations. (Doc. 18 at 9.) In support of this theory, he offers *Gowens v. Tys. S. ex rel. Davis*, 948 So. 2d 513 (Ala. 2006). However, *Gowens* dealt with state-agent immunity under Alabama law, which is only applicable against the Defendants in their *individual*

capacity, not their *official* capacity. As such, sovereign immunity still applies to the Defendants in their official capacities.

Next, Plaintiff argues that sovereign immunity does not extend to his requests for declaratory relief because they are against state officers and seek prospective equitable relief to end continuing violations of federal law. Although *Ex parte Young* allows declaratory relief, it does not apply when the declaratory relief pertains only to past violations of federal law. *See Green v. Mansour*, 474 U.S. 64, 73 (1985) (holding that sovereign immunity barred a claim for declaratory relief because issuance of such a judgment would have had "much the same effect as a full-fledged award of damages or restitution by the federal court"); *see also Summit Medical Assoc., P.C. v. Pryor*, 180 F.3d 1326, 1337 (11th Cir. 1999) ("a plaintiff may not use the [*Ex parte Young*] doctrine to adjudicate the legality of past conduct"). The issuance of a declaratory judgment against the Defendants in their official capacity declaring that, by their past actions, they have exceeded their authority and violated federal law would serve no purpose other than to validate or authorize an award of monetary damages. Accordingly the Defendants' motions to dismiss are due to be granted as to Plaintiff's request to declare that his constitutional rights have been violated.[12]

---

[12] Additionally, the *Ex Parte Young* doctrine would not apply to Plaintiff's request to declare that the Defendants violated Alabama Administrative Code § 660-1-6.09(9)(b) because the doctrine

ii.     Injunctive Relief to Prevent Future Violations

As part of his requests for injunctive relief, Plaintiff seeks to enjoin the Defendants from violating his rights in the future and violating the rights of other alleged non-custodial parents who may prospectively be injured. First, " [i]t is well settled that a 'plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.' " *AT&T Mobility, LLC v. National Ass'n for Stock Car Auto Racing, Inc.*, 494 F.3d 1356, 1361–62 (11th Cir. 2007) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). Thus, Plaintiff has no standing to claim a prospective injury against any non-custodial parents who may be injured by the DHR's policies and practices.

Second, Plaintiff has not alleged sufficient facts demonstrating a threat of future injury to himself by the policies and practices of the DHR. " Because injunctions regulate future conduct, [Plaintiff] has standing to seek injunctive relief only if [he] alleges, and ultimately proves, a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury." *Wooden v. Bd. of Regents of the Univ. Sys. of Ga.*, 247 F.3d 1262, 1284 (11th Cir. 2001) (citation omitted). Plaintiff has not alleged sufficient facts showing that the Defendants attempted to enforce the

_____

does not apply to State law claims.

Paternity Order or the IWO after the Family Court reversed the paternity adjudication. Further, Plaintiff has not alleged sufficient facts demonstrating that the DHR failed to follow this order. Thus, he does not have standing to seek this injunction relief on behalf of himself.

### iii.   Injunctive Relief to End Continuing Violations

As part of his requests for injunctive relief, Plaintiff seeks to compel the Defendants to act in order to end continuing violations of federal law. Plaintiff makes these requests on behalf of himself and other alleged non-custodial parents who may have been injured. Plaintiff has no standing to seek an injunction against the Defendants on behalf of other alleged non-custodial parents who may have been injured. *See supra* Part IV.B.2.ii. Thus, the Court need only determine whether Plaintiff may bring these requests on behalf of himself.

To state a valid claim for injunctive relief, Plaintiff must show: " (1) that he has prevailed in establishing the violation of the right asserted in his complaint; (2) there is no adequate remedy at law for the violation of this right; (3) irreparable harm will result if the court does not order injunctive relief; and (4) if issued, the injunction would not be adverse to the public interest." *Thomas v. Bryant*, 614 F.3d 1288, 1317 (11th Cir. 2010). In support of his requests, Plaintiff alleges that the Defendants'

failure to update and notify credit reporting and income withholding databases of his disestablishment of paternity determination resulted in erroneous post-disestablishment income withholding and credit reporting in violation of the Fourth Amendment's prohibition against harassment[13] and unlawful searches and seizures, the Sixth Amendment's Confrontation Clause, and the Fourteenth Amendment's requirement of substantive and procedural due process. (Doc. 18 at 12; Doc. 36 at 5–6.) However, Plaintiff has not sufficiently alleged any conduct by the Defendants that has led to continuing violations of Plaintiff's constitutional rights. First, the Fourth Amendment's prohibition against unlawful searches does not apply in this case. *See supra* Part IV.A.1.ii.

Second, the Fourth Amendment's prohibition against unlawful seizures does not apply. Plaintiff bases this violation on the Defendants' "seizure of [his] tax refund and wages." (Doc. 7, ¶ 57.) However, a State court entered an order reversing the paternity adjudication, terminating the IWO, suspending any current child support, reducing Plaintiff's child support arrears balance to zero, and ordering the DHR to return to Plaintiff any money being held, including money held for a 2011 tax refund offset. (Doc. 4-2 at 10.) Plaintiff has not alleged sufficient facts demonstrating that the

---

[13] There is no Fourth Amendment prohibition against harassment.

DHR failed to follow this order, or that any funds are still being withheld. Thus, there is no continuing damage from any violation of Plaintiff's Fourth Amendment right against unlawful seizures, and the Court will not issue injunctive relief unless "irreparable harm will result" otherwise. *Thomas*, 614 F.3d at 1317.

Third, there is no violation of the Sixth Amendment's Confrontation Clause. *See supra* Part IV.A.1.v.

Fourth, nowhere in his complaint does Plaintiff implicate the Fourteenth Amendment's requirement of substantive due process. The Due Process Clause "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). Plaintiff only refers to substantive due process in passing in his briefs, never identifies any fundamental right that may apply, and only mentions his "liberty interest in not being classified as a 'dead beat dad.'" (Doc. 7, ¶ 8.) This liberty interest is not of the type that warrants heightened protection. *See Glucksberg*, 521 U.S. at 720 ("[T]he 'liberty' specially protected by the Due Process Clause includes the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion.").

"When a challenged law does not infringe upon a fundamental right, [the Court]

review[s] substantive due process challenges under the rational basis standard."

*Fresenius Medical Care Holdings, Inc. v. Tucker*, 704 F.3d 935, 945 (11th Cir. 2013).

Under the rational basis standard, the government's interference "need only be rationally related to a legitimate government purpose. . . . and the burden is on the one attacking the [government's interference] to negate every conceivable basis that might support it, even if that basis has no foundation in the record." *Leib v. Hillsborough County Public Transp. Com'n*, 558 F.3d 1301, 1306 (11th Cir. 2009). Here, the Defendants' classification of Plaintiff as a "dead beat dad" is rationally related to its interest in improving the effectiveness of child support enforcement. Thus, the Defendant's actions do not violate Plaintiff's Fourteenth Amendment substantive due process rights.

Finally, the Fourteenth Amendment's requirement of procedural due process has not been implicated by the Defendants' conduct. The Due Process Clause protects against deprivations of "life, liberty, or property without due process of law." U.S. Const. amend. XIV. Plaintiff contends that he has been denied various privileges as a result of the damage to his reputation. Specifically, he alleges that "he was rejected for several jobs as a result of [his] classification, denied a passport, placed on a 'dead beat dad' watch list and his credit score was negatively affected relegating him to a lower

credit class. Additionally, his marriage and current job have been strained." (Doc 7, ¶ 8.) He asks for an injunction requiring the Defendants to contact major credit reporting agencies and employers, notify them of the error, and request that they remove any erroneous material.

### a.    Request to Contact Employers

Plaintiff claims that he was deprived of a protected "liberty" interest in his reputation. (Doc. 7, ¶ 8.) However, injury to reputation itself is not a deprivation of liberty. *Paul v. Davis*, 424 U.S. 693, 711–12 (1976). Damages to Plaintiff's reputation "are only recoverable in a section 1983 action if those damages were incurred as a result of government action significantly altering [P]laintiff's constitutionally recognized legal rights." *Cypress Ins. Co. v. Clark*, 144 F.3d 1435, 1438 (11th Cir. 1998). "This doctrine is known as the 'stigma-plus' test, and requires [P]laintiff to show both a valid defamation claim (the stigma) *and* 'the violation of some more tangible interest' (the plus)." *Rehberg v. Paulk*, 611 F.3d 828, 852 (11th Cir. 2010) (citations omitted) (quoting *Behrens v. Regier*, 422 F.3d 1255, 1260 (11th Cir. 2005)).

Loss of employment is a tangible interest that satisfies the "plus" element of the "stigma-plus" test. *Cotton v. Jackson*, 216 F.3d 1328, 1330 (11th Cir. 2000) ("[W]hen reputational damage is sustained in connection with a termination of employment, it

may give rise to a procedural due process claim for deprivation of liberty which is actionable under section 1983."). Here, Plaintiff alleges that he "was rejected for several jobs as a result of [his] classification" as a "dead beat dad." (Doc. 7, ¶ 8.) Rejection from a job opportunity is not enough to establish the "plus" element of the stigma plus test. *See Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1303 (11th Cir. 2001) (denial of a promotion in connection with a stigmatizing injury is not enough to satisfy the "stigma-plus" test); *Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1486 (11th Cir. 1992) ("stigma-plus" test not met because "no loss of income or rank occurred, and *absent a discharge or more*, injury to reputation itself is not a protected liberty interest.") (emphasis added) (overruled on other grounds).

Regarding the injunction Plaintiff seeks, his request that the Defendants send written notification to employers is related solely to his loss of employment opportunities. Thus, injunctive relief cannot be granted because Plaintiff cannot establish a violation of his procedural due process rights related to this request. *See Thomas*, 614 F.3d at 1317. Further, this request is not a "[r]emed[y] designed to end a continuing violation of federal law," and the *Ex parte Young* doctrine does not apply. *Florida Ass'n of Rehabilitation Facilities, Inc.*, 225 F.3d at 1219.

        b.    Request to Contact Credit Reporting Agencies

Plaintiff is also seeking to compel the Defendants to contact credit reporting agencies in order to cure his erroneous credit reports. However, Congress has provided an alternative remedy for curing erroneous credit reports through the FCRA. 15 U.S.C. § 1681 *et seq.* A consumer has the right to request the removal of incorrect information on his credit report himself by contacting the credit reporting agency or bureau that issued the credit report. *See* 15 U.S.C. § 1681i. Should the credit reporting agency or bureau fail to correct Plaintiff's credit report, the FCRA provides a private cause of action. *See id.* §§ 1681n, 1681o. Further, Plaintiff may bring such an action "in any appropriate United States district court, without regard to the amount in controversy, or in any other court of competent jurisdiction." *Id.* § 1681p. Thus, an adequate remedy exists at law for Plaintiff to correct his credit report, and injunctive relief is inappropriate. *Thomas*, 614 F.3d at 1317. Further, because an adequate remedy exists, due process has been afforded to Plaintiff. *See Cotton*, 216 F.3d at 1330–31.[14]

---

[14] The Eleventh Circuit held:

Assuming a plaintiff has shown a deprivation of some right protected by the due process clause, we—when determining if a plaintiff has stated a valid procedural due process claim—look to whether the available state procedures were adequate to correct the alleged procedural deficiencies. If adequate state remedies were available but the plaintiff failed to take advantage of them, the plaintiff cannot rely on that failure to claim that the state deprived him of procedural due process. And, to be adequate, the state procedure need not provide all the relief available under section 1983. Instead, the state procedure must be able to correct whatever deficiencies exist and to provide plaintiff with whatever process is due. . . . [O]nly when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise. It is the state's

Accordingly, Counts I, and VII–XIV are due to be dismissed against the Defendants in their official capacities, and Count VI is due to be dismissed against the Defendants in their official capacities as it relates to injunctive relief.

> iv.   Declaratory Relief to Clarify Plaintiff's Rights and the scope of the Defendants' Legal Duties

As previously mentioned, it is clear to the Court that subject-matter jurisdiction will not exist over these claims. *See supra* Part IV.A.3.ii. Accordingly, Count VI is due to be dismissed against the Defendants in their official capacities as it relates to declaratory relief.

## V.   Conclusion

For the foregoing reasons, Buckner, Fields, and Thompson's Motions to Dismiss are due to be GRANTED. A separate order consistent with this opinion will be entered.

Done this 9th day of August 2013.

---

failure to provide adequate procedures to remedy the otherwise procedurally flawed deprivation of a protected interest that gives rise to a federal procedural due process claim. This rule (that a section 1983 claim is not stated unless inadequate state procedures exist to remedy an alleged procedural deprivation) recognizes that the state must have the opportunity to remedy the procedural failings of its subdivisions and agencies in the appropriate fora—agencies, review boards, and state courts before being subjected to a claim alleging a procedural due process violation.

*Cotton*, 216 F.3d at 1330–31 (citations, internal quotations, and footnote omitted).

L. SCOTT COOGLER

UNITED STATES DISTRICT JUDGE

171032